# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3709 | **DATE** | 12/21/2001 |
| **CASE TITLE** | Nwangwa vs. Federal Express Corporation | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Defendant's motion for summary judgment is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | DEC 26 2001 date docketed | | |
| ✓ | Docketing to mail notices. | | | 24 |
| ✓ | Mail AO 450 form. | | *cm* docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| EF | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED

DEC 2 6 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ISHMAEL NWANGWA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 00 C 3709 |
| vs. | ) | |
| | ) | HONORABLE CHARLES R. NORGLE |
| FEDERAL EXPRESS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, SR. District Judge

Before the court is Defendant's motion for summary judgment. For the following reasons, the motion is granted.

## I. BACKGROUND[1]

Plaintiff, Ishmael Nwangwa, is a Nigerian born male who is over forty years of age. Nwangwa brought this suit alleging that Federal Express Corporation's ("FedEx") termination of his employment violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, and the Age Discrimination in Employment Act, 29 U.S.C. § 626, et seq. Specifically, Nwangwa alleged that FedEx discriminated against him on the basis of his race, gender, age, and in retaliation for complaining of discrimination. The court begins with a short discussion of FedEx's discipline policy, and then outlines the facts underlying this suit.

---

[1]The court takes the facts from the parties' Local Rule 56.1 statements and the accompanying exhibits. Disputed facts are noted in the text.

FedEx has a "Performance Improvement Policy" that encompasses progressive levels of discipline to remedy deficient performance. As relevant to this case, FedEx's disciplinary policy calls for verbal and written counseling to identify and correct minor performance issues. When there is a major performance problem, the employee is issued a written "Performance Reminder," which is a detailed disciplinary notice requiring the employee to provide a detailed corrective action plan. Termination will normally result if an employee receives three Performance Reminders within a twelve month period.

Nwangwa began his employment with FedEx in December 1993 as a temporary handler at FedEx's Midway Airport facility. Approximately one month later, FedEx hired Nwangwa as a permanent handler at another Chicago area location. In May 1994, FedEx promoted Nwangwa to the position of part-time shuttle driver. About a year later, Nwangwa became a part-time courier driver.

During Nwangwa's tenure as a shuttle and courier driver, he entered FedEx's "LEAP" management training program. Nwangwa completed the LEAP program in October 1996, and began applying for operations manager positions at FedEx's Chicago locations. Operations managers have supervisory duties, but are subordinate to a facility's senior manager. Facility senior managers, in turn, are subordinate to managing directors, who supervise a number of facilities in a given area.

On January 1, 1997, FedEx promoted Nwangwa to an operations manager position at its facility in Northbrook, Illinois. During the first few months of Nwangwa's tenure in Northbrook, he received additional management training at FedEx's corporate headquarters in Memphis, Tennessee, and at the Northbrook facility.

2

In November 1997, James Fruhauf became the Northbrook facility's senior manager, to whom Nwangwa had to report. Beginning in April 1998, Fruhauf issued a series of disciplinary memoranda to Nwangwa, including eight counseling memoranda, and three Performance Reminders.

Fruhauf issued Nwangwa's first Performance Reminder on January 14, 1999. The reason was Nwangwa's failure to report two employee injuries in a timely manner. FedEx policy requires operations managers to immediately enter reports of any employee injuries into FedEx's "INJADD" database. On November 5, 1998, one of the employees under Nwangwa's supervision, Hillary Johnston, suffered a head injury as she got out of her vehicle. Nwangwa concedes that he failed to enter this injury into INJADD until November 9th. A much lengthier lapse occurred when another employee, Charla Baer, injured her eye in October 1998. Nwangwa did not enter this injury until January 13, 1999. Nwangwa admits as much, but asserts that it was not his responsibility to report Ms. Baer's injury. He claims that the injury occurred during another operation manager's shift, and was that manager's responsibility to report.

At another point in early 1999, the record does not reflect the exact date, Nwangwa alleges that Fruhauf exhibited racial animus towards him. Allegedly, Fruhauf and a couple of other FedEx employees were standing and smoking outside the Northbrook facility. As Nwangwa walked past these employees, Fruhauf allegedly greeted Nwangwa as the "Little Nigerian." According to Nwangwa, Fruhauf then said that Nwangwa did not explain to his drivers the need to keep FedEx vehicles clean. Fruhauf said that he had placed a tub of garbage on Nwangwa's desk to show Nwangwa how things are done here.

Between February and April 1999, Fruhauf allegedly made several remarks that Nwangwa claims exhibit a racial animus: (1) stating that people at 63rd and Green Street in Chicago are easier

3

to understand than Nwangwa; (2) stating that maybe Al Campanis was correct[2]; (3) referring to Nwangwa as a "black manager;" and (4) asking Nwangwa during a company meeting if they have pizzas in Nigeria, and what wild animals they use for meatballs.

Fruhauf issued a second Performance Reminder against Nwangwa on April 15, 1999. At that time, Fruhauf accused Nwangwa of having too many open driver positions under his supervision, which led to low employee morale and productivity. Fruhauf alleged that the vacancies began on February 24, 1999, with the resignation of Robbie Moore. Another vacancy occurred on March 21, 1999 when Steven Flournoy left Nwangwa's work group. A third vacancy appeared on April 1, 1999 when Ed Hamilton was promoted to a dispatch position. In addition to these three vacancies, a fourth position was unfilled due to the disability of Gina Nechi. With scheduling of vacation and sick days, Fruhauf charged that up to 40% of the driver positions under Nwangwa's supervision were vacant. Nwangwa himself was acting as a driver at that time to cover empty routes. During one such instance, Nwangwa missed a pick up from a customer. As of April 15, 1999, only one of these vacancies had been filled, and the status of the others was unsettled. Fruhauf claimed there was a real possibility of the vacancies remaining open until sometime in May of 1999, which Fruhauf charged was too long. Fruhauf issued the second Performance Reminder because Nwangwa did not respond to these vacancies in a timely manner. Nwangwa testified at his deposition that Fruhauf was wrong because there were no driver vacancies on Nwangwa's shifts during this time period.

---

[2]The court takes judicial notice of the fact that Al Campanis was a former general manager of the Los Angeles Dodgers. The court also takes judicial notice that Mr. Campanis left the Dodgers in 1987 after making comments during a television interview that drew criticism for being racially insensitive.

In June of 1999, Fruhauf and Nwangwa had a confrontation. Nwangwa claims that Fruhauf refused to let Nwangwa be a station representative at a manager's meeting. Fruhauf allegedly said that Nwangwa could go back to his neck of the woods if he didn't like Fruhauf's management. Nwangwa claims that Fruhauf also said that FedEx was no place for affirmative action.

On September 20, 1999, Fruhauf issued the third Performance Reminder to Nwangwa. The basis was that on September 13, 1999, one of Nwangwa's drivers, Jose Lopez, called in to say he would be late for the start of his shift. Nwangwa advised Lopez that he had to report for work on time, and that any absence would be unexcused. Approximately an hour and fifteen minutes after Lopez's scheduled starting time, Nwangwa learned that Lopez did not show up. Nwangwa went out on Lopez's route, but due to his late start, he missed four customer pick ups, resulting in four dissatisfied customers. Nwangwa admits that this occurred. Because this was Nwangwa's third Performance Reminder within twelve months, Fruhauf terminated Nwangwa.

Nwangwa filed a charge of discrimination with the EEOC on January 21, 2000. He accompanied his charge with a written narrative of alleged discrimination on the part of Fruhauf and FedEx. The EEOC issued a right to sue letter, and this suit followed.

FedEx now moves for summary judgment, arguing that Nwangwa does not have evidence to support his prima facie cases of discrimination. Alternatively, FedEx argues that even if the court were to assume the existence of the prima facie cases, it legitimately terminated Nwangwa for performance deficiencies in accordance with its performance policy. FedEx further asserts that Nwangwa has no evidence that the decision to terminate him was pretext for illegal discrimination. In response, Nwangwa alleges that he has evidence of his prima facie cases and that the decision to terminate him was pretextual. As discussed below, FedEx is entitled to summary judgment.

## II. DISCUSSION

### A. Standards for summary judgment:

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High School District No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999); see also Shank v. William R. Hague, Inc., 192 F.3d 675, 682 (7th Cir. 1999) (stating that a party opposing summary judgment must present "what evidence it has that would convince a trier of fact to accept its version of events"). A defendant is entitled to put the plaintiff to his proofs and demand a showing of the evidence. See e.g. Navarro v. Fuji Heavy Industries. Ltd., 117 F.3d 1027, 1030 (7th Cir. 1997). If the plaintiff fails to come up with the required proof, the defendant is entitled to summary judgment. See id. It bears repeating that the plaintiff must present evidence, rather than speculation and conclusions without factual support. See Rand v. CF Industries, Inc., 42 F.3d 1139, 1146-47 (7th Cir. 1994).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment. See Fed. R. Civ. P. 56(c); Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir.1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold. Inc., 369 U.S. 654, 655 (1962); First Nat'l. Bank of

6

Arizona v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

**B.    Nwangwa's Discrimination Claims:**

Nwangwa raises several types of discrimination, including retaliation, race, age, and gender discrimination. The court first addresses Nwangwa's retaliation claim, and then the race, age, and gender claims.

**1.    Retaliation:**

Nwangwa alleges that FedEx violated Title VII by terminating him in retaliation for speaking out against purportedly discriminatory treatment he received from his superiors. (Compl. ¶¶ 5, 11.) A retaliation claim exists when: (1) the employee engaged in statutorily protected expression; (2) the employee suffered an adverse action by the employer; and (3) there is a causal link between the protected expression and the adverse action. See Oest v. Illinois Dept. of Corrections, 240 F.3d 605, 615-16 (7th Cir. 2001); Rabinovitz v. Pena, 89 F.3d 482, 488 (7th Cir. 1996). This case is at the summary judgment stage, where Nwangwa bears the burden of presenting evidence of each of these elements, so that the case should be decided by a trier of fact. See Shank, 192 F.3d at 682 (summary judgment is the time for the plaintiff to "put up or shut up"); Navarro, 117 F.3d at 1030 (noting that a defendant moving for summary judgment is entitled to a showing of the plaintiff's evidence). The parties do not dispute that Nwangwa's termination is an adverse employment action. Nwangwa's claim fails, however, because he has no evidence to support the other elements of his claim, that he spoke out against discriminatory treatment, and that his speaking out caused his termination.

Nwangwa's complaint and memorandum allege in very general terms that Nwangwa complained about discriminatory treatment. These pleadings, however, lack any detail as to what Nwangwa allegedly said during his complaints, to whom he complained, when he complained, how he lodged his complaints, and the context of the complaints. The record lacks evidence of a formal complaint from Nwangwa alleging anything about illegal discrimination during any part of his employment with FedEx. Indeed, Nwangwa admitted during his deposition that he did not file a formal charge of racial discrimination until after he was terminated. Moreover, there is no evidence that any of Nwangwa's purported complaints are tied in any manner to his termination, or even the three Performance Reminders that led to his termination. See e.g. Oest, 240 F.3d at 616 (noting that speculation based on suspicious timing between protected expression and an adverse employment action is insufficient to demonstrate the necessary causal link). With the absence of any substantive evidence of Nwangwa engaging in protected speech and further evidence that the protected speech caused his termination, FedEx is entitled to summary judgment on the retaliation claim. See Frye v. City of Fort Wayne, 241 F.3d 597, 602-03 (7th Cir. 2001) (rejecting a retaliation claim).

**2. Race, Age and Gender:**

Nwangwa alleges that FedEx's termination of him violated Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, and 42 U.S.C. § 1981. Although these statutes provide relief for different types of discrimination, the analysis for each is identical. See Lalvani v. Cook County, Ill., 269 F.3d 785, 789 (7th Cir. 2001) (noting that the prima facie framework for claims under § 1981 and Title VII are the same); Horwitz v. Board of Educ. of Avoca School Dist. 37, 260 F.3d 602, 610 (7th Cir. 2001) (considering an ADEA claim under the analytical framework applicable to Title VII cases). Thus, the court will consider all of the claims together.

Nwangwa can prove his discrimination claims with either direct evidence of discrimination or indirectly through the burden shifting analysis of McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). See Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir. 2000) (analyzing the McDonnell-Douglas test in an ADA/age discrimination case). Direct evidence of discrimination is "smoking gun" evidence, which would take the form of "We fired you because of your age/race/gender." See Robin, 200 F.3d at 1088. Because such evidence is rare, a plaintiff can also proceed using indirect evidence of discrimination and the McDonnell-Douglas burden shifting approach. Id.

Under the burden shifting method, a plaintiff raises a presumption of discrimination by proving his prima facie case by a preponderance of the evidence. See id. The prima facie case is: (1) that the plaintiff is within a protected class, such as one based on race, age, or gender; (2) the plaintiff was meeting the employer's legitimate job expectations; (3) the plaintiff suffered an adverse employment action; and (4) that the employer treated more favorably persons outside of the protected class. See Lalvani, 269 F.3d at 789; see also Mills v. Health Care Svc. Corp., 171 F.3d 450, 454-57 (7th Cir. 1999) (discussing the prima facie analysis to be applied to persons not in a group that has been subjected to historical discrimination). The burden then shifts to the employer to articulate a legitimate non-discriminatory reason for its action. Robin, 200 F.3d at 1088. If the employer does so, the presumption of discrimination disappears, and the plaintiff must prove by a preponderance of the evidence that the employer's stated reasons are a pretext for intentional discrimination. Id. Pretext means a lie. Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343, 348 (7th Cir.1997). Specifically, the plaintiff must demonstrate that the employer's stated reason is phony or completely lacking a factual basis. Paluck v. Gooding Rubber Co., 221 F.3d 1003, 1012-13 (7th Cir. 2000); Jordan v.

9

Summers, 205 F.3d 337, 343 (7th Cir. 2000). As the Seventh Circuit pointed out in Robin, the

burden shifting framework is not a rigid analysis, rather it is tool for the court to determine the need

for a trial. Robin, 200 F.3d at 1088-89. If a plaintiff does not have direct or indirect evidence that

is conclusive in itself, the plaintiff may be able to defeat summary judgment by composing a

convincing mosaic of direct and indirect evidence of discrimination. Id.

Here, the parties dispute whether Nwangwa has evidence to support his prima facie cases,

but the court finds this case to be more appropriately analyzed under the McDonnell-Douglas

approach. The court is not required to analyze the prima facie case. It can assume that a plaintiff

has a prima facie case and proceed directly to the question of pretext. See Jackson v. E.J. Brach

Corp., 176 F.3d 971, 982 (7th Cir. 1999) (assuming that plaintiff met burden of establishing prima

facie case and deciding the matter on pretext issue); Debs v. Northeastern Ill. Univ., 153 F.3d 390,

395 (7th Cir. 1998) (same). Thus, the court assumes, without deciding, that Nwangwa presents his

prima facie cases of race, age, and gender discrimination. As discussed below, however, the court

finds that FedEx had a legitimate reason for its actions, and Nwangwa presents no evidence of illegal

discrimination.

FedEx presents evidence that it terminated Nwangwa for performance reasons. The record

contains the three Performance Reminders Fruhauf issued to Nwangwa, which detail their bases in

very specific terms. The first Performance Reminder came on January 14, 1999. The reason was

Nwangwa's failure to timely report two employee injuries into FedEx's INJADD database, as

required under FedEx policy. The first of these injuries occurred in October of 1998, when FedEx

employee Charla Baer injured her eye. Nwangwa did not enter this injury into INJADD until

January 13, 1999. The second of these injuries occurred on November 5, 1998, when Hillary

Johnston injured her head while exiting her vehicle. Nwangwa failed to report this injury until November 9th.

The second Performance Reminder came on April 15, 1999, as a result of Nwangwa having too many open driver positions under his supervision. The Performance Reminder alleged that three drivers under Nwangwa's supervision, Robbie Moore, Steven Flournoy, and Ed Hamilton had left their positions. A fourth driver, Gina Nechi, was unavailable due to a disability. With additional time off due to vacation and sick days for the drivers that stayed on the job, the vacancies consisted of up to 40% of Nwangwa's work group. Nwangwa admits he acted as a driver to fill vacancies, and during one of these instances, he missed a customer pick up. These vacancies began on February 24, 1999, with Robbie Moore's resignation. As of April 15, 1999, only one of the vacancies was filled, and there was the possibility the other vacancies would remain until sometime in May of 1999. The vacancies resulted in low employee moral, low productivity, and late return of freight.

On September 20, 1999, Fruhauf issued the third Performance Reminder to Nwangwa, resulting in his termination. On September 13, 1999, one of the drivers in Nwangwa's work group, Jose Lopez, called in to say he would be late for the start of his shift. Nwangwa told Lopez to come in on time, but did not do anything else to ensure that Lopez's route would be covered, either by Lopez or another driver. More than an hour after Lopez's scheduled start time, Nwangwa learned that Lopez did not show up, and went out on Lopez's route. Because of Nwangwa's late start, he missed four customer pick ups, resulting in four dissatisfied customers.

Under FedEx's performance policy, the issuance of these three Performance Reminders within a twelve month period is cause for termination. And, each of the Performance Reminders raises legitimate performance issues on the part of Nwangwa that would be cause for termination.

That is, if the Performance Reminders are not coverups for discrimination. The court now turns to that issue.

Nwangwa has the burden of demonstrating that these performance issues are a pretext for illegal discrimination. Again, pretext means a lie. Nwangwa must demonstrate that FedEx's performance reminders are phony, completely lacking a factual basis, or otherwise unworthy of belief. See Paluck, 221 F.3d at 1012-13 (pretext can be shown if there is evidence that the defendant does not honestly believe the stated reason for the adverse employment action); Jordan, 205 F.3d at 343 (pretext exists if the stated reason is a lie or is without factual support); Maarouf v. Walker Mfg. Co., 210 F.3d 750, 754 (7th Cir. 2000) (discriminatory animus on the part of the decision maker or one who supplies information to the decision maker may demonstrate pretext if there is no other evidence of the plaintiff's poor performance). It is not enough to show that FedEx's determination of Nwangwa's performance was poor judgment, mistaken, or even stupid. See Jordan, 205 F.3d at 343; see also Adreani v. First Colonial Bandshares Corp., 154 F.3d 389, 398 (7th Cir. 1998) (analyzing pretext in an ADEA case, noting that the decision-maker's perception is at issue, not the employee's perception); Essex v. United Parcel Service, 111 F.3d 1304, 1309 (7th Cir. 1997) (noting that evidence of an unfair or stupid decision by the employer is not evidence that the proffered explanation is a pretext for illegal discrimination); McCoy v. WGN Continental Broad. Co., 957 F.2d 368, 373 (7th Cir.1992) (federal courts do not "sit as a super-personnel department that re-examines an entity's business decisions."). In light of these principles, the court examines Nwangwa's attempts to demonstrate that the Performance Reminders were pretext for illegal discrimination.

As to the first Performance Reminder, Nwangwa admits that he did not enter Hillary Johnston's head injury into the INJADD database for four days, eliminating any issue of pretext as to that fact. Nwangwa asserts that it was not his duty to report Charla Baer's eye injury because that did not occur during his shift, but does not deny that Ms. Baer's injury was not put into the INJADD database for several weeks. Accepting as true that Ms. Baer's injury did not occur during Nwangwa's shift, it evidences at most a mistake on the part of FedEx, not a lie. And, again, to demonstrate pretext, Nwangwa must show that FedEx is lying about the facts. See Paluck, 221 F.3d at 1012-13; Jordan, 205 F.3d at 343. There is no illegal discrimination if FedEx is simply incorrect about the facts. With Nwangwa's admission that these injuries were not timely entered into the INJADD database, there is no evidence that the first Performance Reminder was pretext for illegal discrimination.

As to the second Performance Reminder, the thrust of the issue was FedEx's belief that Nwangwa's work group was operating short-handed, resulting in low employee morale and productivity. Nwangwa's deposition testimony was a flat assertion that there were no driver vacancies in his work group. But, Nwangwa offers no positive evidence of his own to rebut FedEx's version of the facts. Nwangwa does not deny that Robbie Moore, Steven Flournoy, and Ed Hamilton had left their positions, or that Gina Nechi could not work because of a disability. Nor does Nwangwa deny that he performed driver duties himself, and that he missed a customer pick up while doing so. Moreover, Nwangwa does not claim that he filled the positions left open by the departures of Moore, Flournoy, Hamilton, and Nechi. Similarly, Nwangwa offers no evidence to refute FedEx's complaint of low morale and productivity among the employees in Nwangwa's work group as a result of the driver vacancies. All that Nwangwa presents is his own unsupported assertion that there

13

were no driver vacancies in his work group. Noticeably absent from that assertion is any explanation as to how Nwangwa accomplished having no driver vacancies. There is no evidence that he hired drivers, or that Moore, Flournoy, Hamilton and Nechi stayed in their positions. In short, Nwangwa's unsupported claim that there were no vacancies fails to raise a triable question of fact as to whether there were excessive driver vacancies in his work group that resulted in low employee morale and low productivity. See Rand, 42 F.3d at 1146-47; compare Merheb v. Illinois State Toll Hwy. Auth., 267 F.3d 710, 713 (7th Cir. 2001) (noting that a misunderstanding about behavior perceived by co-workers as threatening was insufficient to overcome summary judgment in favor of the defendant).

Concerning the third performance reminder, Nwangwa admits that the facts alleged in the third Performance Reminder are true. This admission eliminates any issue of pretext as to the third Performance Reminder.

Nwangwa attempts to argue that the Performance Reminders are unworthy of belief because their author, Fruhauf, harbors a racially discriminatory animus. This alleged animus is limited to race. Nwangwa makes no attempt to argue that Fruhauf held an animus against males or persons over forty years of age.

When an employer decides to terminate an employee due to poor performance, there is a question of fact about pretext if the decision maker had a racially discriminatory animus, or if the decision maker relied on information supplied by someone with such an animus. See Maarouf, 210 F.3d at 754 (citing Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1400 (7th Cir. 1997)); Hunt v. City of Markham, Ill., 219 F.3d 649, 652-53 (7th Cir. 2000). This is particularly so when the decision maker or source of information for the decision maker expresses discriminatory feelings around the time of, and in reference to, the adverse employment action. See Hunt, 219 F.3d at 652-

53. But, if there is corroboration of the employee's poor performance that is independent of any discriminatory animus, then the employee's pretext argument will fail. See Maarouf, 210 F.3d at 754. This independent corroboration can come from persons who do not hold discriminatory beliefs, admissions of employee/plaintiff, or objectively verifiable data. See id. at 754-55.

Nwangwa claims that Fruhauf harbored a discriminatory animus. As evidence, Nwangwa alleges that Fruhauf: (1) referred to Nwangwa on one occasion as the "Little Nigerian;" (2) placed a tub of garbage on Nwangwa's desk; (3) stated that people at 63rd and Green Street in Chicago are easier to understand than Nwangwa; (4) said that maybe Al Campanis was correct; (5) referred to Nwangwa as a "black manager;" (6) asked Nwangwa during a company meeting if they have pizzas in Nigeria, and what wild animals they use for meatballs; (7) refused to allow Nwangwa to be a station representative at a manager's meeting; (8) said that Nwangwa could go back to his neck of the woods if he didn't like Fruhauf's management; and (9) said that FedEx was no place for affirmative action. Nwangwa argues that these remarks are evidence that Fruhauf harbors a discriminatory animus, and therefore, he is lying about the information contained in the Performance Reminders.

Assuming for the sake of argument that Nwangwa's evidence is sufficient to support an inference that Fruhauf has a racial animus, cf. Logan v. Kautex Textron North America, 259 F.3d 635, 641 (7th Cir. 2001) (discussing a claim of hostile work environment), there is sufficient independent corroboration of the facts found in the three Performance Reminders to remove any triable issue of pretext. Again, concerning the first and third Performance Reminders, Nwangwa admits that the facts underlying those performance issues are true. Thus, there is no issue of pretext as to those Performance Reminders.

The second Performance Reminder contains specific objectively verifiable information, such as the names of the drivers that left Nwangwa's work group, the dates they left, the reasons they left, and the consequences of the vacancies - namely low employee morale and productivity. FedEx also specifically pointed out that Nwangwa himself had to fill in as a driver, something that Nwangwa does not deny. These are objectively verifiable facts that exist independent of any allegedly discriminatory animus on the part of Fruhauf. In response to these objective facts, Nwangwa offers an unsupported allegation that there were no driver vacancies in his work group. Nwangwa offers no evidence of his own to contradict, or even cast a shadow over, the facts outlined in the second Performance Reminder. Nwangwa gives nothing but a conclusion, which is insufficient to raise a triable issue of pretext.

The court adds that Nwangwa does not tie Fruhauf's allegedly discriminatory statements to the Performance Reminders, either temporally or substantively. Nwangwa fails to provide dates for any of Fruhauf's allegedly discriminatory remarks, and similarly fails to demonstrate that the substance of the remarks were in any way related to Nwangwa's termination or the Performance Reminders. See e.g. Hunt, 219 F.3d at 652-53 (noting that the plaintiff has the burden to demonstrate that discriminatory remarks are tied temporally or causally to an adverse employment action); cf. Frye, 241 F.3d at 602 (same, in the context of a retaliation claim).

In sum, the court assumes that Nwangwa has his prima facie cases of discrimination based on race, gender and age. FedEx argues that it terminated Nwangwa because of his poor performance, rather than as illegal discrimination. FedEx presents the three Performance Reminders as proof of Nwangwa's poor performance, and the court finds that those Performance Reminders raise legitimate performance issues. Nwangwa fails to present any evidence to support an inference that the

Performance Reminders are pretext for illegal discrimination. The facts underlying each of the Performance Reminders are corroborated by independent means, such as Nwangwa's admissions and the objective nature of the facts, rendering any alleged discriminatory animus on the part of Fruhauf a non-factor.

### III. CONCLUSION

For the foregoing reasons, the court grants summary judgment in favor of Defendant. Case terminated.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, SR. Judge
United States District Court

DATED: _12-20-01_